UNITED STATES, Appellee,

v.

Richard ESCOBAR, Airman Basic, U. S. Air Force, Appellant.

No. 36,243.
ACM S–24576.

U. S. Court of Military Appeals.

July 23, 1979.

For Appellant: Captain Thomas S. Markiewicz (argued); Colonel B. Ellis Phillips (on brief).

For Appellee: Lieutenant Colonel Merton F. Filkins (argued); Colonel Julius C. Ullerich, Jr. (on brief); Major Alvin E. Schlechter.

Opinion of the Court

PERRY, Judge:

The appellant was convicted by a special court-martial of larceny of a leather jacket at Lowry Air Force Base, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. He was sentenced to a bad-conduct discharge, confinement for 2 months, and forfeiture of $100 pay per month for 2 months. The United States Air Force Court of Military Review has affirmed. *United States v. Escobar*, 5 M.J. 593 (A.F.C.M.R.1978).

The record reveals that the appellant and two other airmen assisted a fourth airman move from the latter's barracks to an off-base apartment. In the course of removing clothes from the trunk of an automobile at the off-base location, the appellant hid a leather jacket belonging to the fourth airman in the bushes adjacent to the apartment. After the move, the appellant returned to the bushes, retrieved the jacket, and brought it with him back on base to his dormitory room. Several days later, the appellant was seen wearing the jacket on the installation. He was apprehended and

charged with larceny of the jacket at Lowry Air Force Base.

Before this Court, the appellant contends that the court-martial lacked jurisdiction over the offense of larceny because it was completed off base and off duty. The Government relies on the theory of continuing larceny for sustaining the appellant's conviction in this Court, though recognizing that this Court never before has adopted its position.[1] While we decline to hold that this common law principle is applicable to the military justice system, we nonetheless—on the facts of this case—find that the offense of larceny was not, as contended by the appellant, "completed off-base," but that it remained in progress *on* the military installation and, therefore, that the court-martial which tried the appellant for the larceny *at* Lowry Air Force Base had jurisdiction to do so.

█ Article 121 of the Code provides, in pertinent part:

(a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny.

In the congressional hearings that were held prior to enactment of Article 121 into the 1951 Uniform Code of Military Justice, it was made clear that it was "made to include substantially every known misuse of property with or without an intent to commit trespass." Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 772 (1949) (statement of Major General Kenneth F. Cramer). The commentary of the drafting committee which accompanied the proposed legislation reflects that Article 121 "is intended to combine the offenses of larceny by asportation, larceny by trick or device, obtaining property by false pretenses, and embezzlement." Hearings, *supra* at page 1232. Thus, it is clear that reference, during Senate consideration of the Uniform Code of Military Justice, to "taking" being "common law larceny," 96 Cong.Rec. 1307 (1950)—that is, larceny by asportation[2]—was accurate. And that is the interpretation given the "taking" provision of Article 121 today. *See* paragraph 200a (1), Manual for Courts-Martial, United States, 1969 (Revised edition).

So, the "taking" proscription of Article 121 is violated as long as the original aspor-

---

1. "When the defendant commits larceny in one county, and in continuation of his unlawful purpose, takes the property out of the county, the offense is regarded as continuing." 2 *Wharton's Criminal Law and Procedure* (Anderson Edition), § 484. "The rule as to punishability in one county of a thief bringing in goods stolen by him in another county of the same state or country has been applied by analogy to cases involving goods stolen by the thief in one state of the United States and brought into another  . . ." *Id.* at § 485 (footnote omitted). "The reason for the rule  . . .  is somewhat obscurely stated in the cases, but it is sufficiently clear that one of the reasons was that by bringing the stolen goods into the county, the thief committed a new act of caption and asporation in that county, which constituted a new larceny in such county and was punishable there as such." *Id.* at § 484 (footnote omitted). *Accord,* 50 Am.Jur.2d, Larceny, §§ 114–16; 52A C.J.S. Larceny § 69. "[S]uch a prosecution is authorized, not for the crime committed in the other state, since one state cannot enforce the criminal laws of another, but for a larceny committed within the state by the act of bringing the stolen property into the jurisdiction." 50 Am.Jur.2d, *supra* at § 115. This doctrine has been adopted by a number of states not only as a principle of common law—*see e. g., People v. Martinez,* 543 P.2d 1290 (Colo.App.1975); *Hamilton v. State,* 265 Md. 256, 288 A.2d 885 (1972); *Younie v. State,* 281 A.2d 446 (Me.1971), but also as a matter of specific statutory inclusion—*see, e. g., People v. Martinez, supra; State v. Ladely,* 82 Wash.2d 172, 509 P.2d 658 (1973); and *Lovelace v. Commonwealth,* 205 Va. 541, 138 S.E.2d 253 (1964).

2. At common law, larceny was the "[f]elonious taking *and carrying away*" of personalty of another. *Black's Law Dictionary,* Larceny, p. 1023 (emphasis added); 2 *Wharton's Criminal Law and Procedure, supra* at § 447; 50 Am. Jur.2d *supra* at § 2; 52A C.J.S., *supra* at § 1(1).

tation continues.[3]  And we are satisfied that the question of how long the original asportation continues is well answered in *United States v. Barlow*, 152 U.S.App.D.C. 336, 344, 470 F.2d 1245, 1253 (1972) (footnote omitted):

> The crime of larceny obviously continues as long as the asportation continues and the original asportation continues at least so long as the perpetrator of the crime indicates by his actions that he is dissatisfied with the location of the stolen goods immediately after the crime and with no more than a few minutes delay causes another to continue the asportation.[4]

█ The facts of this case support the view that the appellant indicated by his actions that he was dissatisfied with the temporary location of the purloined jacket in the bushes next to his victim's apartment and he returned to the bushes immediately after completing the move, removed the jacket from its place of concealment, and carried it with him back on the installation to his quarters.  In the words of the *Barlow* court:[5]

> [S]ince he [the perpetrator] apparently considered that further asportation was necessary in order to secure the fruits of the crime, the crime itself was incomplete in the sense that the actual offense set in motion by the perpetrator was still progressing and had not been terminated or finished.

Thus, as in *Barlow*, there is no need to rely on the legal fiction [6] of larceny as a continuing offense, for here the facts support the view that a necessary element of the offense—the asportation of the stolen goods—continued onto the installation and the appellant properly was tried for the larceny at Lowry Air Force Base.[7]

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge FLETCHER and Judge COOK concur.

---

3. It is the factual continuation of the *original* asportation that constitutes a part of the crime of larceny.  This is to be distinguished from a *new* asportation into a new jurisdiction, which is the subject of the "continuing larceny" theory discussed, *supra*.

4. The reference to causing *another* to continue the asportation was necessary in *Barlow* because there, the defendant was charged as having aided and abetted the larceny by continuing the original asportation of the perpetrator and the question before the court was whether factually the *original* crime still was in progress and Barlow had *continued* the original asportation (and, thus, Barlow had been a part of the original crime) or whether the original crime had *ceased* when the perpetrator had transferred the stolen goods to the defendant (and, thus, Barlow had *not* been a part of the *original* crime but, if anything, had been an accessory to it after-the-fact).  In any event, Barlow stands for the sound proposition that factually the original asportation continues as long as the perpetrator is not satisfied with the location of the goods and causes the flow of their movement to continue relatively uninterrupted.

5. *United States v. Barlow*, 152 U.S.App.D.C. 336, 343, 470 F.2d 1245, 1251–52 (1972).

6. *Id.* 152 U.S.App.D.C. at 342, 470 F.2d at 1251.

7. This case is distinguishable from *United States v. Riehle*, 18 U.S.C.M.A. 603, 40 C.M.R. 315 (1969), for here it is clear from the specification that the appellant was not charged with the larceny which occurred in the civilian community where this victim lived, but with the larceny as it continued factually on post.  As such, unlike *Riehle*, this larceny was not complete off post.