UNITED STATES, Appellant,

v.

Cecil A. SEIVERS, Captain, U. S. Army, Appellee.

No. 36,087.
CM 435254.

U. S. Court of Military Appeals.

Nov. 13, 1979.

For Appellant: *Captain Stephen P. Henderson* (argued); *Colonel Thomas H. Davis, Lieutenant· Colonel R. R. Boller, Captain Richard A. Kirby* (on brief).

For Appellee: *Captain William L. Finch* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Captain John E. Caulking* (on brief); *Captain Dennis E. Brower.*

Opinion of the Court

PER CURIAM: *

Appellee was convicted before a general court-martial, contrary to his pleas, of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. His sentence by the court-martial panel (dismissal) was approved by the convening authority. The United States Army Court of Military Review, citing *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.

291 (1969), found no jurisdiction over the offense and dismissed the charge. The Judge Advocate General of the Army has certified the following issues to this Court pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2):

### Certified Issue I

DID THE ARMY COURT OF MILITARY REVIEW ERR IN NOT VIEWING THE LARCENY BY FALSE PRETENSE AS COMPLETE ONLY WHEN CAPTAIN SEIVERS RECEIVED THE CHECKS AT HIS ON–POST ADDRESS WITH THE REQUISITE INTENT TO STEAL, THEREBY RENDERING THE OFFENSE SERVICE–CONNECTED FOR THE PURPOSE OF EXERCISING COURT–MARTIAL JURISDICTION BECAUSE IT WAS COMMITTED ON POST?

### Certified Issue II

ASSUMING THE ARMY COURT OF MILITARY REVIEW WAS CORRECT IN PERCEIVING THE LARCENY AS BEING COMPLETED OFF–POST, DO THE SUBSTANTIAL SERVICE–CONNECTING FACTORS SURROUNDING THE OFFENSE NONETHELESS RENDER THAT OFFENSE SERVICE–CONNECTED FOR THE PURPOSE OF EXERCISING COURT–MARTIAL JURISDICTION?

On June 25, 1975, appellee and two enlisted service members, one of whom was under appellee's command, met at appellee's on-base office and agreed to destroy the appellee's Thunderbird automobile. After having a duplicate key to the vehicle made, appellee delivered the key to the enlisted members on the following day at Godman Army Air Field, Fort Knox, Kentucky. They in turn removed the automobile from the parking lot on the base, and maneuvered it over a cliff several miles from Fort Knox. Appellee, reporting the automobile stolen, filed an insurance claim with the insurer of the automobile, United Services Automobile Association (USAA), from his off-base apartment. The insurer, in compliance with the claim filed by the appellee from his off-post address, mailed two insurance drafts to the appellee at his on-base duty station. One draft issued to appellee was in the amount of $1,858.00, and the other, issued jointly to the appellee and the lien holder, Ford Motor Credit Corporation, was in the amount of $5,917.68. Appellee received both drafts at his on-post address and, after having endorsed them, mailed the larger draft to the lien holder and deposited the smaller one to be credited to his account at the Fort Knox National Bank, located on the base.

After hearing testimony and argument at trial, the military judge determined that the court-martial had jurisdiction over the alleged offense. The Government here asserts the correctness of the ruling made by the trial judge on the theory of common-law larceny, urging us to find error in the court below because the receipt of the insurance draft and the deposit of the funds on base to appellee's bank account constituted further asportation by the accused during the course of a continuing larceny. *United States v. Escobar,* 7 M.J. 197 (C.M.A.1979). *Cf. Cameron v. Hauck,* 383 F.2d 966 (5th Cir. 1967), *cert. denied,* 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 828 (1968). The Government would have us determine that the larceny was complete only when the appellee took possession of the proceeds of the scheme on post. *United States v. Williams,* 4 M.J. 336 (C.M.A.1978).

Appellee, citing the lower court's reliance on our opinion in *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976), argues that possession of the proceeds of the scheme was gained at the time that the insurance company placed the draft in the mail addressed to him. *Cf. United States v. Buchhorn,* 15 U.S.C.M.A. 556, 36 C.M.R. 54 (1965). We disagree.

We recently have affirmed the inclusion under Article 121 of the Code of the combined offenses of larceny by asportation, larceny by trick or false pretense, and embezzlement, and the intent of the Congress to include common-law larceny within its purview. *United States v. Escobar, supra;* 96 Cong.Rec. 1307 (1950). The gravamen of

the issue before us is the point at which appellee's fraudulent scheme reached fruition.

■ Appellee's reliance on the Court's opinion in *United States v. Buchhorn, supra,* and authorities cited therein, is misplaced. It is well settled that the larceny continues until such time as its fruits are secured in a place where they may be appropriated to the use of the perpetrator of the scheme. *United States v. Escobar, supra. Cf.* quotation from *Regina v. Campbell,* in *United States v. Barlow,* 152 U.S. App.D.C. 336, 342, 470 F.2d 1245, 1253 (D.C. Cir. 1972). The fruits of appellee's scheme were monies fraudulently obtained from the insurer, USAA. The offense of larceny by fraud was not complete until the insurer's possession of the proceeds of the claim filed by the appellee was severed by his taking actual possession. This was accomplished by receiving the draft at his on-post duty address, and endorsing the draft drawn to his order by the insurer and depositing it in his on-base account. *Molton v. State,* 105 Ala. 18, 16 So. 795; 50 Am. Jur.2d, Larceny, § 11.

An analogy may readily be drawn between the issue here presented and the fraudulent use of credit cards in the mails. The object of a fraud may not necessarily be accomplished when the perpetrator receives possession of the fruits of the scheme. *United States v. Adamo,* 534 F.2d 31 (3rd Cir. 1976), *cert. denied sub nom. Kearney v. United States,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976). The essential part of the credit card scheme, however, invariably has been found to be the receipt of the funds which were its ultimate object, or the services or goods acquired by use of stolen or fraudulently obtained credit cards. *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Pollack,* 175 U.S.App.D.C. 227, 534 F.2d 964 (D.C. Cir. 1976), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *United States v. Lynn,* 461 F.2d 759 (10th Cir. 1972).

■ As the object of appellee's scheme to defraud the insurance company was to obtain monies from the insurer, there is no question that the larceny initiated by the conspiracy continued and did not reach fruition until such time as the draft issued by the insurance company in payment of the fraudulent claim was received by the appellee, endorsed by him and deposited in his account, thus converting the funds to his own use. Because the draft was received, endorsed, and deposited on-base at Fort Knox, Kentucky, the court-martial before which Seivers was tried properly exercised jurisdiction over the offense.

In light of the conclusion reached as to the first issue certified by the Judge Advocate General, it is unnecessary to address the second. The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Military Review for further action pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

COOK, Judge (concurring in the result):

In my opinion, essential steps in the fraudulent scheme engaged in by the appellant and 2 enlisted servicemen were sufficient to warrant the exercise of court-martial jurisdiction. *See* my separate opinions in *United States v. Hedlund,* 2 M.J. 11, 15 (C.M.A.1976); and *United States v. Williams,* 4 M.J. 336, 337 (C.M.A.1978). Thus, I need not decide, at this time, the situs of the completion of the offense.

Appellee filed a motion for a new trial before the Court of Military Review. That court dismissed the motion as moot in view of its resolution of the jurisdictional issue. The motion has not been renewed before this Court, and in view of our resolution of the jurisdictional issue, I join the majority in remanding the case to the Court of Military Review for further consideration, including the motion for a new trial.