UNITED STATES of America, Appellee,

v.

John Russell BROWN, Appellant.

No. 93–2485.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1993.

Decided Aug. 30, 1994.

Order Denying Rehearing Nov. 23, 1994.

R. Thomas Day, St. Louis, MO, for appellant.

Suzanne, Modlin, St. Louis, MO, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

John Russell Brown appeals from a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict finding him guilty of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d) (Count I), using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count II), and unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) (Count III). The district court sentenced Brown under the federal sentencing guidelines to a total of 327 months imprisonment, 3 years supervised release, and a special assessment of $150.00. For reversal, Brown argues the district court erred in (1) refusing to give his proposed accessory after the fact instructions and (2) denying his motion to sever the unlawful possession count (Count III) from the bank robbery counts (Counts I and II). For the reasons discussed below, we reverse the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.

On October 28, 1992, at about 10:20 a.m., a man in disguise robbed the First National Bank of Annapolis, Missouri, of approximately $29,400.00. The robber was wearing a black wig, bushy eyebrows and a mustache. He was pulling a stocking mask over his face when he entered the front door of the bank. One of the bank employees asked him if he was robbing the bank. The robber replied "That's right" and waved a gun in front of the tellers. One of the bank employees gave the robber the money and he left the bank. The robber drove away in a blue pickup truck. One bank employee read the license plate number and another wrote it down.

Later that day a sheriff's deputy discovered a blue pickup truck matching the description of the getaway vehicle under a railroad track about a mile and a half north of Annapolis. The truck was empty and had no license plates.

The day after the robbery, a boy found two duffel bags near the railroad tracks. The boy opened one of the bags and found bundles of money inside. The boy notified the authorities and returned to the site with a deputy sheriff. The site appeared to have been marked with a plastic milk jug on a stick. The deputy sheriff found inside the bags Montana license plates matching those of the getaway vehicle, a scanner, a wig, knee-high stockings, and a gun. These items were later identified by bank employees as similar to those used by the robber. No fingerprints were found on any of these items. The deputy sheriff stuffed the bags with leaves and returned them to their original location. The site was placed under surveillance.

The next day a state trooper on surveillance duty noticed Brown and another man walking along the railroad tracks. Brown ran down the embankment toward the location of the duffel bags. After Brown located the bags and opened one of them, he was arrested.

Four bank employees independently identified Brown as the robber from a group of six photographs and later in court. In addition, a traffic flagger working in the area on the morning of the bank robbery identified Brown, from the photograph display and later in court, as the man she had noticed wearing a wig with his face "made up" driving a blue truck. She testified that she first noticed the truck in the southbound lane. About 30 minutes later she saw the same truck in the northbound lane; this time the driver was not wearing the wig. Three other bank employees were unable to identify Brown as the robber from the photograph display.

Brown was charged with armed bank robbery and two firearms violations. The district court denied the defense motion to sever the unlawful firearm possession count (Count III) from the bank robbery counts (Counts I and II) because the government had agreed to stipulate that Brown had five prior felony convictions without stating the nature of the offenses. Over the objection of defense counsel, the government read the stipulation to the jury. Brown then testified about the nature of his prior felony convictions, which included three armed bank robberies and one unlawful possession of a firearm during the commission of a felony. Brown also testified that an acquaintance had paid him to pick up the bags along the railroad tracks but that he did not know what was inside them. Defense counsel proffered accessory after the fact instructions, but the district court refused them. The jury found Brown guilty of all counts. The district court sentenced Brown to a total of 327 months imprisonment (267 months for Counts I and III, 60 months consecutive for Count II), 3 years supervised release, and a special assessment of $150.00. This appeal followed.

ACCESSORY AFTER THE FACT

■ Brown first argues the district court erred in refusing to instruct the jury with regard to the offense of accessory after the fact. Brown argues that his theory of defense was that he was, at most, an accessory after the fact. He argues that the jury could have reasonably found from the evidence that, while he did not rob the bank, he knew about the bank robbery and knowingly acted to assist the robber when he attempted to retrieve the duffel bags containing the stolen money. The government did not charge Brown as an accessory after the fact.

■ "When reviewing a challenge to the jury instructions, we recognize that the district court has wide discretion in formulating the instructions and will affirm if the entire

charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." *United States v. Casas,* 999 F.2d 1225, 1230 (8th Cir.1993) (citing *United States v. Sanders,* 834 F.2d 717, 719 (8th Cir.1987), *cert. denied,* ── U.S. ──, 114 S.Ct. 894, 127 L.Ed.2d 86 (1994). "[A] defendant is entitled to a jury instruction if the request is timely, the evidence supports the instructions, and the proffered instruction correctly states the law." *United States v. Sanders,* 834 F.2d at 719. In particular, "a defendant is 'entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his [or her] favor.'" *United States v. Searing,* 984 F.2d 960, 967 (8th Cir.1993), *citing Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988).

We hold the district court should have given the jury the proffered accessory after the fact instructions. First, the request was timely made. Next, Brown's testimony explaining why he had attempted to retrieve the duffel bags, although arguably somewhat less than credible, was nonetheless sufficient for a reasonable jury to find that he was an accessory after the fact. In addition, no fingerprints were found on the items inside the duffel bags, the robber had been disguised, and three bank employees were not able to identify Brown as the robber from the photo array. Finally, the proffered instructions correctly stated the applicable law and correctly directed the jury to acquit Brown if the jury found him not guilty of bank robbery, but guilty as an accessory after the fact. In the present case, the accessory after the fact theory functions as a defense. This is because the government did not charge Brown as an accessory after the fact. The government's theory of the case was that one person had committed the bank robbery and that Brown was that person. Brown did not dispute either that the bank had been robbed or that he had attempted to retrieve the duffel bags; his theory of defense was that he was, at most, an accessory after the fact.

The jury could not have found Brown guilty as the bank robber and as an accessory after the fact for the same bank robbery because being an accessory after the fact is "an offense where 'one knowing that an offense ... has been committed, receives, relieves, comforts or assists *the offender* in order to hinder his [or her] apprehension, trial or punishment.'" *United States v. Barlow,* 152 U.S.App.D.C. 336, 470 F.2d 1245, 1252 (1972), *citing* 18 U.S.C. § 3; *see also United States v. Bissonette,* 586 F.2d 73, 76 (8th Cir.1978). Brown cannot be both the offender and the accessory after the fact for the same offense.

> The gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he [or she] has committed the crime.... The very definition of the crime [of being an accessory after the fact] also requires that the felony not be in progress when the assistance is rendered because then [the person] who renders assistance would aid in the commission of the offense and be guilty as a principal.

*United States v. Barlow,* 470 F.2d at 1252–53. Here, the bank robbery was complete by the time Brown attempted to retrieve the duffel bags, that is, the immediate escape phase was over and the stolen money had been satisfactorily concealed. *See United States v. Willis,* 559 F.2d 443, 444 & n. 5 (5th Cir.1977) (per curiam) (bank robbery not consummate transaction until immediate removal phase comes to a halt; bank robbery may certainly be complete without an escape—as where culprits apprehended before their escape—but continues throughout escape for purposes of characterizing involvement of additional parties who knowingly and willfully join in escape phase only); *see also United States v. Barlow,* 470 F.2d at 1253 (larceny continues as long as asportation continues, that is, at least so long as perpetrator is dissatisfied with location of stolen goods immediately after crime); *cf. United States v. James,* 998 F.2d 74, 80 (2d Cir.) (escape phase is part of ongoing robbery; party who knowingly joins escape phase is properly liable as a principal, rather than as accessory after the fact), *cert. denied,* ── U.S. ──, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993); *United States v. Balano,* 618 F.2d 624, 631 (10th Cir.1979) (same), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980).

## SEVERANCE OF COUNTS

 Brown also argues the district court erred in denying his motion to sever the unlawful firearms possession count (Count III) from the bank robbery counts (Counts I and II). He acknowledges that the prior felony convictions were relevant to the unlawful firearms possession count (Count III), but he argues the nature of the offenses underlying his prior felony convictions was unfairly prejudicial with respect to the bank robbery counts (Counts I and II), especially because three of the prior felony convictions were armed bank robberies and thus similar in nature to the offense charged.

In view of our decision to reverse and remand the case on the basis of the instruction issue, we need not reach this issue. However, because the issue may arise on remand, we will address it. We note that, after the government read the stipulation over a defense objection, Brown himself testified about the nature of the underlying offenses. But for our decision to reverse and remand on the instruction issue, such a course of action would constitute a waiver of the objection.

We do not think the district court abused its discretion in denying the motion to sever the counts. The district court followed *United ed States v. Williams*, 923 F.2d 76, 78 (8th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991). In that case, which, like the present case, involved bank robbery and firearms counts, the district court refused to sever the unlawful possession count from the bank robbery and use of a firearm in the commission of a felony counts, even though the defendant's three prior convictions were for armed robberies, two of which were armed bank robberies and similar in nature to the offense charged. We rejected the defendant's claim of prejudice because the government read a stipulation which stated that the defendant had been convicted of three prior felonies but contained no other information. *Id.* The government followed substantially the same procedure in the present case. The stipulation stated that Brown had been convicted of five prior felonies and described the prior felony convictions by date, jurisdiction, docket number, and location. The stipulation contained more information than the stipulation in *United States v. Williams*, but it did not include any information about the nature of the underlying offenses.

Accordingly, we reverse the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.

Nov. 23, 1994

On the Court's own motion, the mandate issued in this appeal is recalled nunc pro tunc to the date of October 26, 1994. The Clerk is directed to file the appellee's petition for rehearing. After consideration, the petition for rehearing is denied. The mandate shall issue forthwith.