**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Terry Lee CONNER, Defendant-Appellant.**

No. 83–2127.

United States Court of Appeals, Tenth Circuit.

Jan. 15, 1985.

John E. Green, First Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

David W. Duncan of Duncan & Miller, Durango, Colo., for defendant-appellant.

Before BARRETT, SETH and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Terry Lee Conner (Conner) appeals his jury conviction of taking money from a federally insured institution by force, violence, and intimidation in violation of 18 U.S.C. §§ 2113(a) and (d). The Government's case against Conner, established through the testimony of ten witnesses, will be summarized only insofar as is necessary to consider Conner's allegations of error on appeal.

On the evening of December 28, 1982, two men held Steven and Ellen Thompson captive in their house overnight. At the time, Steve Thompson was the Executive Vice-President of the Quail Creek Bank, Oklahoma City, Oklahoma. The next morning, at 6:30 a.m., the two men took the Thompsons to the bank. Once at the bank, the two men ordered various bank employees arriving for work to gather the bank's money and place it into large nylon bags. The two men left the bank at approximately 8:30 a.m. with approximately $750,000.00

in cash, making their departure in Thompson's car. At the time the two men left the bank, there were some thirty bank employees being held inside the bank.

Immediately after the two men left, the authorities were called and a composite drawing of one of the men (Conner) was prepared. The drawing portrayed the man with a full beard and full head of hair.

Following the robbery, the bank employees and Mrs. Thompson were shown photographic lineups of potential suspects who resembled the composite drawing. Conner was identified by several of the people as the person who "most resembled" one of the assailants. During the course of the ongoing investigation, Mrs. Thompson was also shown a third lineup concerning other possible defendants involved in the robbery. The third lineup did not relate to Conner.

Conner was subsequently arrested in California on March 8, 1983. At the time of his arrest, Conner had in his possession some $30,000.00 in cash, $10,000.00 of which had been taken from Quail State Bank at the time of the robbery. Conner also possessed a note bearing the label "Hilton Inn Northwest, Oklahoma City, Oklahoma," with the name and telephone number of a Michelle Celerier of Seattle, Washington.

At trial, Conner was identified as one of the assailants by Thompson and several bank employees. Celerier testified that she had been in Oklahoma City at the time of the robbery, she had given her name and number on a Hilton Inn notepad paper to a gentleman who identified himself as Gary Caldwell, she had subsequently had dinner with the gentleman in Seattle, and the note bearing her name and telephone number which was found in Conner's possession at the time of his arrest was the note she had given to the gentleman who identified himself as Gary Caldwell. Celerier, however, was unable to identify Conner as the man she had met in Oklahoma City or as the man she had dined with in Seattle.

Conner did not testify at trial. The composite drawing prepared after the robbery portrayed one of the assailants as having a full beard and full head of hair. Conner, however, appeared at the trial clean shaven and balding. Conner's entire defense at trial was predicated on mistaken identity.

On appeal Conner contends (1) that it was reversible error for the Government to fail to turn over material, exculpatory evidence in its possession, and (2) that the district court failed to adequately instruct the jury on the issue of eyewitness identification testimony.

Conner contends that it was reversible error for the Government to fail to turn over material, exculpatory evidence in its possession. Specifically, Conner contends that the Government failed to reveal (1) the existence of a third photographic lineup on one Lawrence Caldwell, and (2) a statement by Celerier that she had given her name and address to a man she had met in Oklahoma City approximately one week before the robbery and that the man identified himself as Gary Caldwell. Conner argues that the Government's failure to provide him with this evidence was in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and that his conviction should therefore be reversed.

■■■ To establish a violation of *Brady* a defendant must establish that the prosecution suppressed evidence that was favorable to him or exculpatory and that the evidence was material. *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 275, 276, 78 L.Ed.2d 256. A finding of materiality is required under *Brady*. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Materiality turns on the specific circumstances surrounding the alleged *Brady* violation. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Failure to disclose requires reversal only if the alleged nondisclosure "might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2398.

■■■ The record does not support Conner's allegation that the Government's fail-

ure to reveal a third lineup and Celerier's anticipated testimony gave rise to reversible error under *Brady* and its progeny. It is uncontested that the third lineup related to the Government's ongoing investigation into other potential defendants involved in the robbery; it did not relate to Conner. As such, the third lineup was not material. Furthermore, whereas the failure of the Government to reveal Celerier's anticipated testimony might well have been material to Conner's defense if Celerier had identified Conner at trial, the Government's failure in this respect was immaterial. Celerier repeatedly testified that Conner did not look like the man she had met in Oklahoma and that she could not make a positive identification. Furthermore, as with the third lineup, Celerier's testimony reflected the Government's ongoing investigation and did not go to Conner's guilt or innocence. Under such circumstances we hold that Conner has failed to establish a *Brady* violation.

Conner contends that the district court's instruction on eyewitness identification was inadequate, and that the court erred in refusing to give his proffered cautionary instruction on the unreliability of eyewitness testimony. Conner argues that the majority of the evidence against him was based on eyewitness testimony which was uncertain and inconsistent. Conner also argues that although the district court's instruction charged the jurors that if they had a reasonable doubt as to the identity of him as the robber they had to find him not guilty, in accordance with *McGhee v. United States*, 402 F.2d 434 (10th Cir.1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969), the court's instruction did not go far enough. Conner argues that under the facts herein, the court erred in refusing to give his proffered cautionary instruction on the unreliability of eyewitness testimony. Conner's proffered instruction read:

"Testimony tending to prove identify (sic) is to be scrutinized with extreme care. The possibility of human error or mistake and the probable likeness or similarity of persons are circumstances that you must consider in weighing testimony as to identify. You should carefully consider the facts that bear upon the credibility that you attach to the witnesses' testimony, such as (1) whether the witness had an opportunity to observe the subject clearly; (2) whether the witness is positive in the identification; (3) whether the witnesses' identification is weakened by prior inconsistent identification; (4) whether the witnesses' testimony remained positive and unqualified after cross-examination; and (5) whether the identification was the product of the witnesses' own recollection in view of the strength and circumstances under which it was made.

"You must be satisfied, beyond a reasonable doubt, as to the accuracy of the witnesses' identification of the person."

The district court instructed:

"In evaluating the identification testimony of a witness, you should consider all of the factors already mentioned concerning your assessment of the credibility of any witness in general and should also consider, in particular, whether the witness has had an adequate opportunity to observe the person in question at the time or times about which the witness has testified. You may consider in that regard such matters as the length of time the witness had to observe the person in question, the prevailing conditions at that time in terms of visibility or distance or the like, and whether the witness had known or observed the person at earlier times.

"You may also consider the circumstances surrounding the identification in itself, including for example the manner which the defendant was presented to the witness for identification and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the defendant.

"If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the defendant as the perpetrator of the of-

fense charged, you must find the defendant not guilty."

Both Conner and the Government cite our decision in *United States v. Thoma*, 713 F.2d 604 (10th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 721, 79 L.Ed.2d 183, in which we reviewed a similar allegation of error. In *Thoma* we stated:

> In *United States v. Cueto*, 628 F.2d 1273, 1276 (10th Cir.1980), *this Court held that failure to give an instruction that contained cautionary language about the infirmities of eyewitness identification testimony was not reversible error when the government's case did not depend upon a single eyewitness and identification was corroborated by other evidence.* In *McGee v. United States*, 402 F.2d 434 (10th Cir. 1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969), in response to the argument by the defendant that a cautionary instruction was required, this Court said:
>
>> "[I]n situations where the conclusiveness of identification has been challenged, it is incumbent upon the court to call attention to the fact that the jury must find beyond a reasonable doubt that it was the defendant on trial who had committed the acts as alleged."
>
> *Id.* at 436 (footnote omitted).

713 F.2d at 607–08.

 Applying these standards to the facts herein we hold that the district court did adequately instruct the jury and did not err in refusing to give Conner's proffered instruction. As in *Thoma*, this is not a case in which the Government's case depended on a single eyewitness whose testimony was not corroborated by other evidence. At trial Conner was identified by: Jude Espe, a bank employee ("there was no question in my mind, sir, that that was the man," R.Vol. III at 93); Stephen Thompson, Executive Vice-President of the bank ("I can say that that is the right person" and "I'll never forget it as long as I live," R.Vol. III at 167); Albert Lang, Vice-President of the bank ("I was twelve inches

away from the person at the time of the robbery during some discussions that were held during that time, and there were some things that tend to remain in your memory," R.Vol. IV at 348); and Mary Tiller, a collections teller at the bank (In referring to identifying Conner from a photographic lineup, "I was positively certain that was, you know, the one," R.Vol. IV at 356). The eyewitnesses' identification of Conner was also corroborated by the fact that at the time of Conner's arrest he had $10,000.00 of the bank's cash in his possession. The district court did not err in refusing Conner's proffered instruction.

AFFIRMED.