**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Peter Nick THOMA,
Defendant-Appellant.**

No. 81–1753.

United States Court of Appeals,
Tenth Circuit.

Aug. 1, 1983.

George M. Haley of Haley, Stolebarger & Davis, Salt Lake City, Utah, for defendant-appellant.

Brent D. Ward, U.S. Atty., and Bruce C. Lubeck, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before SETH, Chief Judge, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Defendant Peter Nick Thoma appeals his conviction on two counts of bank robbery, violations of 18 U.S.C. § 2113(a), and two counts of armed bank robbery, violations of 18 U.S.C. § 2113(d). He alleges that two deficiencies in the district court's instruc-tions to the jury deprived him of due process of law and constituted reversible error.

Because the instructions must be viewed in the context of the trial, we summarize the evidence presented at the trial. The charges against the defendant stemmed from robberies in Roy, Utah of the Bank of Utah on February 5, 1981, and of the First Security Bank on March 3, 1981. The defendant was arrested on April 9, 1981 after a tip from an acquaintance of the defendant's common-law wife. At trial, the prosecution presented five witnesses to the robbery. Two witnesses, Janet Wakefield and Pam Ernst, were tellers at the Bank of Utah. Both testified that Ms. Wakefield had been robbed by a man with a beard and a moustache who was carrying a gun in his left hand and a manila envelope in his right hand. Each testified that she had picked the defendant's picture out of a photographic lineup, and each made an in-court identification of the defendant as the robber. The other three witnesses were employees of First Security Bank. Lana Nielsen and Kathy Butler, tellers at the bank, testified that Ms. Nielsen was robbed by a bearded man in a plaid jacket. Each testified that she had identified the defendant from a photographic lineup, and each made an in-court identification of the defendant. Ms. Nielsen testified that the man had a gun in his left hand and a manila envelope in his right hand. Nalyn Olney, manager of the First Security Bank, testified that he could not identify the robber because he had seen the robber only from the back, but that the robber was wearing a two-tone brown "Pendleton-type" jacket. A red and black plaid jacket that had been received from the defendant's common-law wife was introduced into evidence; Mr. Olney claimed that this jacket was similar to the one worn by the robber.

The prosecution's final witness was Linda Hedgers, the defendant's common-law wife. She testified that the defendant had a beard at the time of the robberies, that he was left handed, and that twice during February and March 1981 he had brought home sums of money in a manila envelope even

though he was unemployed. On cross-examination, Ms. Hedgers admitted that she and a man with whom she began to live two days after the defendant's arrest had made the decision to call the police about the defendant.

The defense presented no evidence. The defense counsel relied upon cross-examination, pointing out discrepancies in the witnesses' testimony and attempting to cast doubt on the accuracy of their identifications. In closing arguments, the defense counsel emphasized that the prosecution had failed to produce any tangible evidence directly linking the defendant to either robbery. He suggested that the identifications were unreliable because they were based on photographs of the defendant rather than on recollections of the robbery and because the photographic lineup was biased in that the other photographs bore no resemblance to the defendant. Finally, he emphasized the inherent unreliability of eyewitness testimony, particularly in a situation in which the witness is under stress and has little time for observation. At the close of the trial, the defense counsel requested that a cautionary instruction be given on eyewitness identification, and he objected to the presumption of intent instruction offered by the prosecution. The judge refused the defendant's instruction and gave the prosecution's instruction.

## I

The defendant argues that the judge's instruction to the jury that "[y]ou may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted" created a conclusive or burden-shifting presumption relieving the prosecution of the burden of proving criminal intent on the part of the defendant beyond a reasonable doubt. He claims that the jurors could have believed that the presumption was mandatory, so that if they found that the defendant committed the acts constituting the crime they would be required to find that the defendant intended to commit the crime. Relying

upon *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), he claims that possibility deprived him of due process.

The instruction in *Sandstrom* found to create a mandatory presumption and thus to be unconstitutional was: "The law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 515, 99 S.Ct. at 2454. The Court noted that the exact language of the instruction is critical in determining whether a presumption is permissive or mandatory:

"The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes.... That determination requires careful attention to the words actually spoken to the jury ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction."

442 U.S. at 514, 99 S.Ct. at 2454. Because the instruction given in *Sandstrom* did not inform the jurors that they had a choice whether to infer the existence of intent, the presumption was mandatory and thus impermissible.

To evaluate the character of the jury instruction in this case, it is necessary to view the instruction in context. The instruction challenged by the defendant provided in its entirety:

"Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider all of the facts and circumstances in evidence which indicate his state of mind. You may consider it reasonable to draw the inference and find that a person intended the natural and probable consequences of acts knowingly done or knowingly omitted. But, it is entirely up to you to decide the facts from the evidence."

We do not believe that the instruction could be construed by a reasonable juror to create

anything other than a permissive presumption. The instruction does not use mandatory language; it uses the permissive "may." In addition, the instruction expressly provides that the decision whether to draw the inference or not is "entirely up to" the jurors. A permissive presumption does not violate due process if the conclusion to be inferred can rationally be inferred from the facts. *Ulster County Court v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). The presumption involved in this case was permissible and did not deprive the defendant of due process of law. *See generally United States v. White*, 649 F.2d 779, 782 & n. 4 (10th Cir.) (jury instruction created only a permissive inference, not a presumption), *cert. denied*, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 186 (1981).

## II

The defendant's other claim is that he was denied due process by the refusal of the district court to give a requested instruction to the jury on eyewitness identification. The substance of the instruction requested was that eyewitness identification testimony should be received with caution and scrutinized with care if the testimony is weakened by lack of opportunity on the part of the witness to observe the accused, lack of positiveness by the witness, prior inconsistent identification or failure to identify, or qualification of the testimony on cross-examination. The requested instruction also stressed the duty of the prosecution to establish the identity of the defendant as the perpetrator of the crime beyond a reasonable doubt. The defendant claims that the testimony in this case was weakened by the witnesses' lack of opportunity to observe, lack of positiveness in their identifications, and qualification of their testimony on cross-examination. He contends that because identity was the main issue in this case and because the majority of the evidence against the defendant was eyewitness testimony that had been weakened, the instruction was necessary for the jury's proper consideration of the evidence.

Courts have expressed concern about the unreliability of eyewitness identification testimony. *See United States v. Wade*, 388 U.S. 218, 228–29, 87 S.Ct. 1926, 1932–33, 18 L.Ed.2d 1149 (1967); *United States v. Kavanagh*, 572 F.2d 9, 11 (1st Cir.1978). Two circuits have held that a cautionary instruction must be given when identification is the key issue in the case and the identification testimony is uncertain or qualified. *United States v. Barber*, 442 F.2d 517, 528 (3d Cir.), *cert. denied*, 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83 *and* 404 U.S. 958, 92 S.Ct. 347, 30 L.Ed.2d 275 (1971); *United States v. Hodges*, 515 F.2d 650, 652–53 (7th Cir.1975). Two other circuits have held that it is not error to refuse to give such an instruction. *United States v. Evans*, 484 F.2d 1178, 1188 (2d Cir.1973); *United States v. Masterson*, 529 F.2d 30, 32 (9th Cir.), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). Other circuits have strongly urged the giving of such an instruction when identification is the main issue in a case and evidence of identification is uncertain or qualified, but have stopped short of saying that failure to give the instruction is reversible error in every case. *United States v. Telfaire*, 469 F.2d 552, 556–57 (D.C.Cir. 1972); *United States v. Kavanagh*, 572 F.2d 9, 12 (1st Cir.1978); *United States v. Holley*, 502 F.2d 273, 275 (4th Cir.1974); *United States v. Dodge*, 538 F.2d 770, 784 (8th Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977).

In *United States v. Cueto*, 628 F.2d 1273, 1276 (10th Cir.1980), this Court held that failure to give an instruction that contained cautionary language about the infirmities of eyewitness identification testimony was not reversible error when the government's case did not depend upon a single eyewitness and identification was corroborated by other evidence. In *McGee v. United States*, 402 F.2d 434 (10th Cir.1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969), in response to the argument by the defendant that a cautionary instruction was required, this Court said:

> "[I]n situations where the conclusiveness of identification has been challenged, it is incumbent upon the court to call atten-

tion to the fact that the jury must find beyond a reasonable doubt that it was the defendant on trial who had committed the acts as alleged."

*Id.* at 436 (footnote omitted).

When a cautionary instruction on the possible infirmities of eyewitness testimony is requested and not given, on appeal we will focus on the facts of each case to determine whether the instruction was required to fairly present the case to the jury. In particular, we will consider whether identification was the sole or primary issue in the case, whether the evidence consisted mainly of eyewitness identification testimony, and whether that testimony was uncertain, qualified, or suggested a serious question whether the witnesses had an adequate opportunity to observe. In the instant case, the government's case did not depend upon a single eyewitness, but upon several witnesses whose identifications were not shaken despite some uncertainties and disparities in their testimony and whose testimony was partially supported by the testimony of the defendant's common-law wife. In addition to standard instructions on the jury's duty to weigh the credibility of witnesses, the presumption of innocence, and the burden upon the government to prove guilt beyond a reasonable doubt, the district court instructed the jury that "in order to convict [the defendant]—he is presumed to be innocent—you have got to believe beyond a reasonable doubt, as that was explained to you in these instructions, that he was that someone." The district judge specifically stated that the critical issue in the case was identification. In addition, the defense counsel emphasized the discrepancies in the testimony and stressed that eyewitness identification testimony is inherently unreliable. While actions by counsel cannot always cure deficiencies in jury instructions, we think that the jury's attention was sufficiently focused on the issue of identification and the possibility of misidentification that the failure to give a cautionary instruction in this case was not reversible error.

AFFIRMED.