17 F.3d 1437
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Walter Edmond MOORE, Jr., Defendant-Appellant.
 No. 92-1351.
 United States Court of Appeals, Tenth Circuit.
 Feb. 17, 1994.
 
 1
 D.C. No. 92-CR-14, D. Colo.
 
 
 2
 AFFIRMED.
 
 
 3
 Before TACHA and EBEL, Circuit Judges, and COOK, Senior District Judge.*
 
 
 4
 ORDER AND JUDGMENT**
 
 
 5
 H. DALE COOK, Senior District Judge.
 
 
 6
 Defendant-appellant Walter Edmond Moore, Jr. was charged by an eight-count superseding indictment filed on September 11, 1992. The case was tried and defendant was convicted by a jury of Count One, Interstate Travel in Furtherance of Racketeering in violation of 18 U.S.C. Secs. 1952 and 2; Count Two, Conspiracy to Possess with Intent to Distribute More than 50 Grams of Cocaine Base in violation of 21 U.S.C. Secs. 846, 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. Sec. 2; Count Three, Possession with Intent to Distribute More than 50 Grams of Cocaine Base within One Thousand Feet of a School, in violation of 21 U.S.C. Secs. 860, 841(a)(1) and (b)(1)(A)(iii); Count Four, Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. Secs. 924(c) and 2. Trial by jury was waived by Mr. Moore as to Counts Seven and Eight and he was convicted by the district court of two separate counts of Possession of Firearms by Previously Convicted Felon in violation of 18 U.S.C. Secs. 922(g)(1) and 2. Counts Five and Six were dismissed upon motion of the government during trial. Appellant's post-trial motions for acquittal and new trial were denied. Mr. Moore now appeals from his convictions, raising three principal issues. Our jurisdiction arises under 28 U.S.C. Sec. 1291 and we affirm.
 
 
 7
 One Sylvester Hoskins was the target of a drug investigation by the Denver Police Department. As a result of the investigation, a search warrant was obtained for Hoskins' residence. The execution of the warrant resulted in the discovery of controlled substances, including cocaine, for the possession of which Hoskins was arrested. Following his arrest, Hoskins agreed to supply information as to his cocaine supplier. He stated that for the past three months he had been purchasing crack cocaine from an individual known only to Hoskins as "J.R." or "Junior", who lived at an apartment on Lafayette Street specified by Hoskins. Hoskins stated that sometimes J.R. told Hoskins that he needed to wait for delivery because it was necessary for J.R. to go to his grandparents' house to pick up the crack cocaine. On one occasion, Hoskins stated, J.R. took Hoskins to his grandparents' house on Marion Street and showed Hoskins a plastic shopping bag that was half filled with apparent crack cocaine. J.R. told Hoskins that he stored larger quantities of crack at his grandparents' house in order to prevent it from being stolen or seized by the police. Hoskins was present at the Lafayette Street apartment on November 16, 1991 and observed J.R. with a large quantity of suspected crack cocaine and currency, as well as two handguns.
 
 
 8
 Police contacted the manager of the apartment house, who related that one of the two individuals residing in the targeted apartment was Walter Edmond Moore, who went by the name of Junior. A photo of Moore was shown to Hoskins, who identified Moore as the same J.R. who was distributing and storing crack cocaine. Based upon the corroborated information provided by Hoskins, search warrants were obtained for the Lafayette Street and Marion Street addresses.
 
 
 9
 On November 21, 1991, the Denver Police Department executed the search warrant at the Lafayette Street apartment. There were six individuals in the apartment at the time of the search, one of them the defendant. Two weapons were found, a Davis .380 automatic and a 9 millimeter semi-automatic. Several zip-lock bags of marijuana were found in the refrigerator and a small amount of crack cocaine was found in the bedroom. Money totaling approximately $5,000.00 was found in the apartment, primarily on top of a television set and in a closet.
 
 
 10
 A search was also conducted at the Marion Street address late November 20 or early November 21, 1991. Inside a padlocked bedroom, police found two semi-automatic rifles under the bed. No ammunition was with the rifles. Detective Peterson testified that the rifles were in a position of easy access, and that he was able to remove them immediately from their location. A safe containing approximately 470 grams of crack cocaine as well as ammunition was found in the bedroom closet. A Ruger Mini-14 .223-caliber semi-automatic assault rifle was found unloaded in a duffel bag in the closet. Detective Gavito testified that, while the closet was crowded, it did not take long to find these items. A 12-gauge shotgun was found under the couch, containing nine live rounds of ammunition. Detective Gurule testified that the gun took only seconds to retrieve.
 
 
 11
 During the search of the Lafayette Street apartment, Moore was placed under arrest. He was advised of his rights, and subsequently participated in an interview. He told police that he had access to the safe which contained the drugs and weapons, and that a person named Jay had given him the safe and the guns to hold for Jay. Moore described taking a trip to California with Jay to purchase cocaine. Moore said that he picked up cocaine from a person named Bobby and put it in the safe in the Marion Street address. Moore also stated that he knew ammunition was in the safe and that Jay brought him the guns.
 
 
 12
 Prior to trial, Moore moved to suppress the evidence seized at the Marion Street address on the basis that the four corners of the supporting affidavit did not give reasonable cause to believe that the things listed as objects of the search would be located in the place to be searched. Further, that the only information in the affidavit related to Marion Street was Hoskins' assertion that approximately one month before the application for the search warrant, Hoskins had been at the premises at Marion Street and that crack cocaine had been present at the premises; therefore, Moore argued, the pertinent information was stale and did not support the issuance of a search warrant as to the Marion Street address. The trial court denied the motion. Moore raises the same grounds on appeal.
 
 
 13
 The Fourth Amendment prohibits the issuance of a warrant except upon probable cause. The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. On review, we must ensure that the magistrate had a substantial basis for concluding that probable cause existed. United States v. Brown, 984 F.2d 1074, 1076 (10th Cir.) cert. denied, 114 S.Ct. 104 (1993) (citations omitted). In assessing whether a search warrant is supported by probable cause, a magistrate's determination of probable cause must be given considerable deference. United States v. Wicks, 995 F.2d 964, 972 (10th Cir.) cert. denied, --- S.Ct. ---- (1993) (citations omitted). A single affidavit was presented to the magistrate in seeking search warrants for both residences. The affidavit contains the following references to the Marion Street address:
 
 
 14
 Hoskins related to your affiant on the occasions that "J.R." told Hoskins he needed to wait was due to the fact that "J.R." had to go to his grandparents house to pick up the "crack" cocaine. (Appendix to Appellant's Brief, Exh. B. at p. 2).
 
 
 15
 Through conversations with "J.R." and from the above described method of obtaining "crack" cocaine, Hoskins has learned that "J.R." keeps "crack" cocaine both at his apartment on Lafayette Street and at his grandparents house which Hoskins knew to be in the 2300 block of Marion Street in Denver. Your affiant and Hoskins later responded to the 2300 block of Marion Street where your affiant had Hoskins point out the address of "J.R.'s" grandparents which your affiant determined to be 2346 Marion Street. (Id.)
 
 
 16
 Hoskins related to your affiant that approximately one month ago from 11-20-91, Hoskins took "J.R." to the Marion Street address where he (J.R.) showed Hoskins a plastic Safeway shopping bag that was half filled with suspected "crack" cocaine. (Id. at 3).
 
 
 17
 The question before the Court, therefore, is whether these three statements are sufficient to establish probable cause to issue a search warrant for the Marion Street address. We have previously articulated the general principles governing this area of the law:
 
 
 18
 [P]robable cause to search cannot be based on stale information that no longer suggests that the item sought will be found in the place to be searched. While it is true that the timeliness of the information contained in the affidavit is an important variable, probable cause is not determined simply by counting the number of days between the facts relied on and the issuance of the warrant. Rather, whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized. Thus, where the property sought is likely to remain in one place for a long time, probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant. By the same token, where the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical.
 
 
 19
 United States v. Shomo, 786 F.2d 981, 983-4 (10th Cir.1986).
 
 
 20
 Here, the information present in the affidavit shows that the informant had once personally observed apparent cocaine in defendant's possession at the Marion Street address, albeit a month earlier, and that defendant had stated to informant that cocaine was maintained at that address for security reasons. The factual statements contained in the affidavit support the reasonable inference that the Marion Street residence was part of ongoing drug-related activity. We believe that, viewing the totality of the circumstances, such evidence was sufficient to establish a "fair probability" that the item to be searched for would be at the location searched. Since Moore had admitted that the Marion Street address served as a "storage locker" of sorts, there was good reason to think that a significant quantity of drugs would be present even a month after the informant's observation. The Court therefore rejects Moore's staleness argument. The affidavit clearly establishes a substantial connection between Moore, drug trafficking, and the Marion Street address. While the government apparently concedes that there was no ongoing investigation of Moore, per se, (Appellee's Brief at 14), there was an ongoing investigation of crack cocaine distribution generally, and Moore played a role in that distribution. We therefore affirm the district court in its denial of Moore's motion to suppress.
 
 
 21
 Next, Moore argues that the district court erred in its denial of his motion for judgment of acquittal and new trial as to Count 4, a conviction for violation of 18 U.S.C. Sec. 924(c). That section provides in pertinent part that whoever, during and in relation to any drug trafficking crime, uses or carries a firearm, is guilty of a separate punishable crime. Defendant argues that because there was no evidence presented to the jury of a drug transaction taking place at the Marion Street address, the jury could not rationally find that the guns at the Marion Street address were "used" during and in relation to a drug trafficking crime. In reviewing the denial of a motion for judgment of acquittal, we must determine whether the evidence at trial was sufficient to permit a "rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." In making this determination, we view the evidence and any inferences that may reasonably be drawn from it in the light most favorable to the government. United States v. Brown, 995 F.2d 1493, 1502 (10th Cir.) cert. denied, 114 S.Ct. 353 (1993) (citations omitted).
 
 
 22
 The use element of Sec. 924(c)(1) is satisfied when: (1) the defendant had "ready access" to the firearm, and (2) the firearm was "an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed." United States v. Parrish 925 F.2d 1293, 1297 (10th Cir.1991) (quoting United States v. McKinnell, 888 F.2d 669, 675 (10th Cir.1989). Here, the storage and protection of the drugs increased the likelihood that the criminal undertaking would succeed. A nexus (i.e., the second McKinnell element) is presumed between a firearm and a drug trafficking offense when an individual with ready access to a firearm is involved in such an offense. United States v. Coslet, 987 F.2d 1493, 1495 (10th Cir.1993). A defendant can overcome the presumption by presenting evidence that the weapon was present for a reason other than facilitating the drug transaction. Id. First, defendant points to an error in the trial court's order denying the motion for judgment of acquittal when the trial court stated that a transfer of drugs did occur at the Marion Street address. Defendant correctly notes that no such evidence was presented to the jury. However, in United States v. Hager, 969 F.2d 883, 888-89 (10th Cir.) cert. denied, 113 S.Ct. 437 (1992), we noted with approval that other courts have held that, in defining "use", there is no requirement that a drug transaction has occurred at the place where the drugs are found. Next, defendant asserts that "there was no evidence submitted to the jury as to the Marion Street property being actively involved in any transactions, but rather that it was solely a storage facility utilized by the unindicted co-conspirator." (Appellant's Brief at 20). This court in Hager, Id. at 889, quoted with approval from United States v. Hadfield, 918 F.2d 987, 998 (1st Cir.1990), cert. denied, 111 S.Ct. 2062 U.S. (1991), (emphasis added) as follows:
 
 
 23
 It is reasonable, we think, if an operable firearm is found in close proximity to a room or rooms in which drug distribution, processing, or storage occurs, for the factfinder to conclude that the defendant knew the gun was there and intended it to be available for use in connection with the predicate offense.
 
 
 24
 Defendant further argues that the guns "pre-dated" the cocaine and were also merely being stored by defendant for another party. The government contended at oral argument, though not in its brief, that this argument is refuted by examining defendant's six-page statement or "confession" (Appendix to Appellant's Brief, Exh. J) given to the Denver police, which statement was presented to the jury below. At page 5 of the statement, defendant says that "Jay" brought him the guns and that there were "three in a bag and one in a box, the shot gun was in the box." Government counsel noted at oral argument that, inasmuch as the four guns found at the Marion Street address were no longer in bag and box, but rather were placed strategically around the room in proximity to cocaine, it is a reasonable inference by the jury that defendant was not a mere "storage locker" attendant over the weapons.
 
 
 25
 Government counsel provided no transcript reference, and our review has not noted if such an argument was made below. More pertinent, though not cited by the government, is the following testimony of Detective Gassman:
 
 
 26
 Q. Detective Gassman, what exactly did Mr. Moore tell you about the drugs that were in the safe?
 
 
 27
 A. Well, that they were Mr. Clark's, and that he had access to it, just like the weapons, he had access to them, and he could go over anytime and get what he needed, and that's what he was selling.
 
 
 28
 (Appendix to Brief of Appellee, p. 30, 11. 17-22).
 
 
 29
 Though defense counsel vigorously attacked this testimony on cross-examination as not appearing in Moore's written statement, the testimony was not discredited to the point that the jury could not give it credence. Under the appropriate standard of review, therefore, we find that the defendant did not rebut the presumption of nexus and affirm on the issue of "use."[1]
 
 
 30
 Defendant argues that the trial court erred in denying his motion for new trial, which was based upon the argument that, because defendant was charged with using "one or more" of four weapons, the jury's general verdict of guilty is insufficient to show unanimity as to one particular gun. Defendant did not object to the trial court's instructions to the jury or submit a proposed instruction on this issue. No contemporaneous objection was made to the verdict form used by the trial court, nor did the defendant submit a proposed verdict form requiring a unanimous verdict as to a particular weapon. We review under the plain error standard. See United States v. Hager, 969 F.2d 883, 890 (10th Cir.) cert. denied, 113 S.Ct. 482 (1992). Defendant relies upon United States v. Theodoropoulos, 866 F.2d 587 (3rd Cir.1989). Upon review, we find that the trial court properly distinguished Theodoropoulos as a case in which only one weapon was inside an apartment while the other three weapons were in a trash can outside on the porch. Here, all four weapons were inside the apartment and readily accessible. As the trial court noted, we have previously distinguished Theodoropoulos on the same basis. See United States v. Moore, 919 F.2d 1471, 1476 (10th Cir.1990), cert. denied, 111 S.Ct. 2812 (1991). While a specific verdict form would have aided clarity, its absence under the facts of this case does not rise to the level of plain error. We affirm the district court's denial of the motion for new trial.
 
 
 31
 Finally, defendant argues that the trial court erred in denying the defendant's tendered jury instructions as to the lesser included offenses of accessory after the fact and mere possession. When we review a claim of error relating to jury instructions, the instructions must be read and evaluated in their entirety. United States v. Rodriguez-Garcia, 983 F.2d 1563, 1572 (10th Cir.1993). The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge. United States v. Chapman, 615 F.2d 1294, 1298 (10th Cir.) cert. denied, 446 U.S. 967 (1980). The trial court's determination will not be disturbed on appeal in the absence of an abuse of discretion. United States v. Crouthers, 669 F.2d 635, 640 (10th Cir.1982). Specifically, a lesser included offense instruction is warranted if: (1) there has been a proper request; (2) the lesser offense includes some, but not all, of the elements of the offense charged; (3) the element differentiating the two offenses is in dispute; and (4) a rational jury could convict the defendant of the lesser included offense and acquit of the greater offense. United States v. Dennison, 937 F.2d 559, 564 (10th Cir.1991), cert. denied, 112 S.Ct. 886 (1992).
 
 
 32
 As to accessory after the fact, 18 U.S.C. Sec. 3 provides in pertinent part as follows:
 
 
 33
 Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.
 
 
 34
 The elements of a Sec. 3 violation are (1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial or punishment of the offender. United States v. Lepanto, 817 F.2d 1463, 1467 (10th Cir.1987). By contrast, the elements of a Sec. 841(a)(1) violation are (1) that the defendant knowingly possessed the controlled substance described in the indictment (here, crack cocaine); and (2) that the defendant intended to distribute this substance. United States v. Hager, 969 F.2d 883, 887 (10th Cir.) cert. denied, 113 S.Ct. 437 (1992). Therefore, as the government argues, the second Dennison factor for the propriety of giving a lesser included offense instruction is not met. In response, the defendant argues that he does not actually fit within the elements of Sec. 841 because "there is no evidence that the Defendant intended to actually distribute the cocaine himself." (Appellant's Reply Brief at 11). This ignores the fact that the defendant was in fact found guilty by the jury of a Sec. 841 violation, and that therefore the jury found that the requisite intent had been proven beyond a reasonable doubt. Defendant has not raised the issue of sufficiency of the evidence as to his Sec. 841 conviction and has therefore waived it. The Court finds no error in the trial court's refusal to given an accessory after the fact instruction.
 
 
 35
 As for a "mere possession" instruction, this Court has held that possession is not a lesser included offense of a conspiracy charge. United States v. Horn, 946 F.2d 738, 744 (10th Cir.1991). Therefore, no basis existed for giving such an instruction in connection with Count 2. As to Count 3, possession with intent to distribute, the record reflects that defense counsel tendered the proposed instruction after presenting argument and it was refused by the trial court. No record of the trial court's rationale is before us. If the trial court concluded that a rational jury could not have convicted of the lesser offense and acquitted of the greater, we are reluctant to reverse this determination (made on the trial court's hearing of the evidence) as an abuse of discretion, particularly in view of the testimony of Detective Gassman previously quoted. Defendant cites Fitzgerald v. United States, 719 F.2d 1069, 1071-72 (10th Cir.1983), as establishing the proposition that a trial court is not "apt" to give the lesser included offense instruction if (1) there is a substantial amount of drugs involved, and (2) there is plenty of traffic to and from the defendant's storage place. Actually, this Court in Fitzgerald cited those two factual circumstances in that case without excluding others. Here, in addition to an amount of drugs far beyond any personal use, found in defendant's residences were a large amount of money, pagers, and the firearms (all "tools of the trade" in drug distribution). On the record before us, we cannot say that the trial court abused its discretion in refusing the tendered "mere possession" instruction.
 
 
 36
 For the foregoing reasons, Mr. Moore's convictions are affirmed.
 
 
 
 *
 The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Appellant's counsel noted at oral argument the existence of Smith v. United States, 113 S.Ct. 2050 (1993), in which the Supreme Court held that the exchange of a gun for narcotics constitutes "use" of a firearm within the meaning of Sec. 924(c)(1). Counsel stated he believed the decision had no applicability to the facts of this case and did not affect Tenth Circuit precedent in regard thereto. We agree