F I L E D
United States Court of Appeals
Tenth Circuit

DEC 21 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES S. McGUIRE,

Defendant-Appellant.

No. 98-3350

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 98-CR-40047-DES)

---

Marilyn M. Trubey, Assistant Federal Public Defender, (David J. Phillips, Federal
Public Defender, with her on the brief), of Topeka, Kansas, for Appellant.

Thomas G. Luedke, Assistant United States Attorney, (Jackie N. Williams, United
States Attorney, and Robin D. Fowler, Assistant United States Attorney, on the
brief), of Topeka, Kansas, for Appellee.

---

Before **KELLY, McKAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  INTRODUCTION

Following a jury trial, James S. McGuire was convicted on charges of taking a motor vehicle by force and violence ("carjacking") in violation of 18 U.S.C. § 2119; he was sentenced to a term of imprisonment of 135 months. In calculating McGuire's sentence, the district court added four points to McGuire's offense level pursuant to United States Sentencing Guideline ("U.S.S.G." or "Sentencing Guidelines") § 2B3.1(b)(3)(B) because the victim of the carjacking suffered serious bodily injury. McGuire appeals his conviction and sentence, asserting that the district court erred in the following four respects: (1) failing to submit to the jury the question of whether the victim of the carjacking suffered serious bodily injury; (2) refusing to instruct the jury that the crime of being an accessory after the fact is a lesser included offense of carjacking; (3) refusing to give the jury a requested cautionary instruction on the reliability of eyewitness identifications; and (4) limiting McGuire's cross-examination of a government witness. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. BACKGROUND

On April 13, 1998, sometime after 6:00 p.m., Michelle Jellison was at a cemetery in Topeka, Kansas, visiting her father's grave. As she was walking through the cemetery, Jellison noticed two men sitting beside her car; one of the

men was holding a bat. The man with the bat, later identified as McGuire, approached Jellison and asked for a cigarette. Nervous that the man intended to do her harm, Jellison started walking toward a group of people some distance away in the cemetery. Unfortunately, they left before she reached them. McGuire accompanied her as she walked across the cemetery.

Jellison eventually returned to her car. She told the two men she would give them a ride, but wanted first to get a friend to accompany them. In response, McGuire swung the bat at Jellison, who tripped and fell to the ground. McGuire then hit her with the bat while she was on the ground, and even hit her several more times after she gave him her car keys. Jellison testified that throughout this incident, the other man, later identified as David Clovis, remained beside the vehicle and did not say anything. Clovis testified, however, that he ran over, picked up the car keys, yelled at McGuire, and attempted to pull McGuire away from Jellison. McGuire and Clovis eventually left in Jellison's car.

After the attack, Jellison summoned help from two people in the cemetery. With their aid, Jellison first attempted to call her boyfriend because it was his car that was stolen. When that attempt failed, she called the police. The first officer arrived on the scene at 8:15 p.m. Based on statements made by Jellison at the time, he testified that the incident occurred at 7:55 p.m. Jellison, on the other hand, estimated that the incident occurred at approximately 7:00 p.m., as the sun

-3-

was nearing the western horizon. During cross-examination on the question of whether there was sufficient light at the time of the incident to allow her to adequately view her assailant, Jellison acknowledged that there were no street lights near where the incident occurred.

At trial, Jellison described the clothing of the man who beat her as being dark khaki, black, or dark grey jeans and a dark khaki, dark grey, or black long jacket. She further testified that the attacker was wearing two or three gold hoop earrings. She had earlier told the police that the two men were of approximately the same age and build and both had on dark jackets and pants. When Jellison gave the police a description of her assailant, her main focus of identification was the earrings worn by the person. She did not see the second person closely enough to determine if he also wore earrings.

During Jellison's direct testimony at trial, Clovis was brought into the courtroom for the purpose of identification. Jellison stated unequivocally that it was not Clovis who hit her with the bat. Furthermore, on the day after the attack, Jellison had been shown a photographic lineup which contained McGuire's photo. At that point, she identified McGuire as being the assailant. Clovis' picture was not, however, included in that initial photographic lineup.

On April 14, 1998, at 1:00 am., McGuire and Clovis were arrested in Manhattan, Kansas. At the time the police approached the defendants, McGuire was seated in the passenger seat of the stolen vehicle. Clovis, who identified himself as David Brian Jackson, jumped out of the car and made a telephone call from a pay phone when he saw the police. Clovis gave the police several stories regarding how he arrived in Manhattan and how he came to be in possession of the vehicle. Clovis also told the police that he went to Manhattan to purchase drugs.

Although Clovis was not wearing earrings at the time of his apprehension, his left ear was double pierced. McGuire wore two silver hoop earrings in his left ear. McGuire was wearing a black and blue nylon coat; Clovis wore a black leather coat. Clovis had $150 in his possession; McGuire had $1.70.[1] Clovis testified at trial that he spent $250 of Jellison's money in an attempt to acquire marijuana, but that he never received the marijuana.

Clovis, who was still thought to be David Brian Jackson, was eventually transported from Manhattan to Topeka, Kansas. Based on their observation that McGuire was wearing two earrings in his left ear and on Jellison's selection of McGuire's picture from a photographic lineup, the officers told Clovis they

---

[1]Jellison testified at trial that her "fanny pack" was in the stolen car and that it contained approximately $500 in cash.

believed he was a passive participant in the carjacking. En route back to Topeka, Clovis directed the officers to two locations, where items from Jellison's car and the bat were recovered.

Clovis eventually pleaded guilty to being an accessory after the fact and agreed to testify against McGuire. In exchange for the guilty plea and cooperation, the government recommended that Clovis receive a sentence of twelve months. At McGuire's trial, Clovis acknowledged having been diagnosed as being manic-depressive and suffering from bipolar disorder. Although he had been placed on medication to control his behavior, Clovis acknowledged he was not on such medication at the time of this incident.

McGuire's defense theory was that Clovis was the actual attacker and that he was, at best, a passive participant. In support of that theory, McGuire adduced testimony tending to indicate, *inter alia*, that the attack might have taken place as late as 7:55 p.m. when visibility might be reduced; Clovis and McGuire looked alike and were similarly dressed on the evening of the attack; Jellison's perceptions might have been affected because she was distraught during the entire episode; Clovis was driving the vehicle at the time they were caught; and Clovis had $150 in large bills on him at the time he was arrested.

At the conclusion of the trial, McGuire was found guilty of carjacking in violation of 18 U.S.C. §§ 2119 and sentenced to a term of imprisonment of 135 months.

### III. ANALYSIS

*A.      Failure to Submit Question of Serious Bodily Harm to the Jury*

In calculating McGuire's sentence under the Sentencing Guidelines, the district court increased McGuire's offense level by four points because Jellison suffered serious bodily injury as a result of the carjacking.      *See* U.S.S.G. § 2B3.1(b)(3)(B).  For the first time on appeal, McGuire asserts that the district court erred in not submitting the question of the extent of Jellison's injuries to the jury.  In so arguing, McGuire relies on the Supreme Court's recent decision in *Jones v. United States*   , 119 S. Ct. 1215 (1999).   [2]

---

[2]McGuire asserts that this court should review *de novo* the propriety of the district court's failure to submit the question of serious bodily injury to the jury because the Supreme Court handed down its decision in *Jones* after his trial had been completed.  The Supreme Court recently rejected a similar argument, holding that an appellate court should review an assertion of error which was not raised at trial under Federal Rule of Criminal Procedure 52(b)'s plain-error rubric, even when the failure to object at trial was based upon well-settled precedent. *See United States v. Johnson*, 117 S. Ct. 1544, 1548 (1997); *see also United States v. Rogers*, 118 F.3d 466, 471 (6th Cir. 1997) (collecting cases).  Under the plain-error rubric, before this court can correct an error not raised at trial there must be (1) an error, (2) that is plain, and (3) that error must affect the defendant's substantial rights. *Johnson*, 117 S. Ct. at 1549.  If all three of those conditions precedent are met, this court can exercise its discretion to correct the

-7-

In *Jones*, the Supreme Court held that subsections (2) and (3) of 18 U.S.C. § 2119, respectively establishing increased penalties for carjackings which result in serious bodily injury or death,[3] are not mere sentencing enhancements, but are, instead, separate offenses "which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Jones*, 119 S. Ct. at 1228. As noted by McGuire, this case shares several superficial procedural similarities with *Jones*. For instance, both McGuire and the defendant in *Jones* were indicted for carjacking in violation of 18 U.S.C. § 2119. *See id.* at 1218. Neither the indictment here nor the indictment in *Jones* made any reference to

---

error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). Because, as set out below, the district court did not err in failing to submit the question of serious bodily injury to the jury, this court need not address the remaining plain-error factors.

[3]Section 2119 provides as follows:
> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall–
> > (1) be fined under this title or imprisoned not more than 15 years or both,
> > (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and
> > (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119.

§ 2119's numbered subsections and neither alleged that the victim was injured in the carjacking. *See id.* Finally, as in this case, the jury instructions given in *Jones* "defined the elements subject to the Government's burden of proof by reference solely to the first paragraph of § 2119, with no mention of serious bodily injury." *Id.*

At the post-verdict stage, however, this case diverged markedly from the facts in *Jones*. As noted by the Supreme Court in discussing the procedural history in *Jones*,

> The case took a new turn . . . with the arrival of the presentence report, which recommended that [Jones] be sentenced to 25 years for the carjacking because one of the victims had suffered serious bodily injury. The report noted that [the victim] had testified that [the carjackers'] gun caused profuse bleeding in [his] ear, and that a physician had concluded that [he] had suffered a perforated eardrum, with some numbness and permanent hearing loss. Jones objected that the 25-year recommendation was out of bounds, since serious bodily injury was an element of the offense defined in part by § 2119(2), which had been neither pleaded in the indictment nor proven before the jury. The District Court saw the matter differently and, based on its finding that the serious bodily injury allegation was supported by a preponderance of the evidence, imposed a 25-year sentence on the carjacking count, together with a consecutive 5-year sentence for the firearm offense.

*Id.* In stark contrast to the facts in *Jones*, McGuire's presentence report specifically noted that the maximum term of imprisonment under § 2119 was fifteen years. In calculating the appropriate term within the zero to fifteen-year window, the presentence report increased McGuire's offense level by four points

-9-

pursuant to U.S.S.G. § 2B3.1(b)(3)(B) because Jellison had suffered serious bodily injury. Unlike in *Jones*, however, there was never any discussion of increasing the statutory maximum penalty pursuant to § 2119(2) on that ground. In fact, McGuire was ultimately sentenced to a term of imprisonment of 135 months, well below the 180-month maximum term provided for in § 2119(1). Moreover, McGuire was provided with a copy of the presentence report well before the sentencing hearing in accord with Federal Rule of Criminal Procedure 32(b)(6). Unlike the defendant in *Jones*, however, McGuire indicated that he had no objections to the facts and calculations set forth therein.[4]

In spite of these important procedural differences, McGuire claims that the district court erred in failing to submit the question of Jellison's injuries to the jury. The Supreme Court's decision in *Jones*, however, does not stand for the incredibly broad proposition that anytime the question of bodily injury to a victim arises in a federal prosecution, even in the application of the Sentencing Guidelines, that question must be submitted to the jury. Instead, the *Jones* decision is exceedingly narrow. It stands only for the limited proposition that when the government seeks to invoke the heightened penalties set out in §§ 2119(2) and (3), it must charge the aggravating facts of serious bodily injury or

---

[4]As this procedural history reveals, McGuire's assertion that he never had notice that the injuries to Jellison would be relevant to his sentence, and, therefore, no chance to litigate the extent of those injuries, is absolutely frivolous.

death in the indictment, submit the question to the jury, and prove the existence of the aggravating fact, as an element of the crime, beyond a reasonable doubt. *See Jones*, 119 S. Ct. at 1227; *see also United States v. Eads*, 191 F.3d 1206, 1214 (10th Cir. 1999) (holding that the "more reasonable reading of *Jones*" is "one that anchors its holding to its facts, *i.e.*, the statutory provision involved"). Because McGuire was not sentenced pursuant to the heightened penalties set out in § 2119(2), *Jones* simply has no relevance to this case.

In this case, the question of serious bodily injury was considered as a sentencing factor pursuant to § 2B3.1(b)(3)(B), rather than as an element of aggravated carjacking pursuant to § 2119(2). Accordingly, the government was obligated to prove that injury, at a post-verdict sentencing proceeding, by a mere preponderance of the evidence. *See United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994). The facts set forth in the presentence report, to which McGuire did not lodge an objection, are more than sufficient to satisfy that evidentiary standard. *See* Fed. R. Crim. P. 32(b)(6)(D) (noting that the district court can adopt as its own those facts set forth in the presentence report to which no objection has been lodged).

B.   *Failure to Instruct Jury that Accessory After the Fact is a Lesser Included Offense of Carjacking*

At trial, McGuire proffered a jury instruction which (1) set forth the elements of the crime of being an accessory after the fact; (2) would instruct the jury that the crime of being an accessory after the fact was "necessarily" a lesser included offense of the crime of carjacking; and (3) provided that should the jury find McGuire not guilty of carjacking, it should move on to consider whether he was guilty of being an accessory after the fact. The district court declined to give the requested instruction. Under the standards set forth by this court in *United States v. Benally*, 146 F.3d 1232, 1236 (10th Cir. 1998), McGuire contends that the district court erred in refusing to give his proffered instruction.

To conclude that a district court erred in declining to give a lesser-included-offense instruction, this court must find the existence of the following four elements:

> "(1) there was a proper request; (2) the lesser included offense includes some but not all of the elements of the offense charged; (3) the elements differentiating the two offenses are in dispute; and (4) a jury could rationally convict the defendant of the lesser offense and acquit him of the greater offense."

*Id.* (quoting *United States v. Moore*, 108 F.3d 270, 272 (10th Cir. 1997)). Whether an offense for which an instruction is sought qualifies as a lesser included offense of the offense charged is a question of law which this court reviews *de novo*; a district court's decision that the evidence is insufficient to

justify the giving of a lesser-included-offense instruction is reviewed for an abuse of discretion. *See United States v. Duran*, 127 F.3d 911, 914 (10th Cir. 1997).

Without any analysis or citation to authority, McGuire asserts that the first three *Benally* elements are satisfied, *i.e.*, being an accessory after the fact is a lesser included offense of carjacking. He further claims that the only remaining question on appeal is whether the jury could rationally convict him of being an accessory after the fact while acquitting him of carjacking. The United States contests McGuire's assertion that being an accessory after the fact is a lesser included offense of carjacking. In particular, relying on the elements test set forth by the Supreme Court in *Schmuck v. United States*, 489 U.S. 705, 716 (1989), the United States argues that being an accessory after the fact is never a lesser included offense of carjacking because it requires proof of an element that the underlying offense does not, *i.e.*, the defendant provided aid to the principal *after the commission of the crime* in order to prevent the principal's apprehension, trial, or punishment. *Id.* ("Where the lesser offense requires an element not required for the greater offense, no [lesser-included-offense] instruction is to be given . . . .").

This court agrees with the United States that being an accessory after the fact is not a lesser included offense of carjacking. In so concluding, we find

convincing a recent decision of the First Circuit in *United States v. Rivera-Figueroa*, 149 F.3d 1 (1st Cir. 1998). In *Rivera-Figueroa*, a defendant raised the exact argument advanced by McGuire in this appeal. *See id.* at 6. In rejecting the claim that an accessory-after-the-fact charge is a lesser included offense of carjacking, the First Circuit held as follows:

> A defendant is ordinarily entitled to a lesser-included-offense charge, if consistent with the evidence. [*Schmuck*, 489 U.S. at 715-16 & n.8; Fed. R. Crim. P. 31(c).] For obvious reasons, it is often to the defendant's advantage to request such a charge. But using the "elements" test adopted by the Supreme Court in *Schmuck*, 489 U.S. at 716, an accessory-after-the-fact offense is almost never going to be a lesser include offense as to the principal crime.
>
> The accessory-after-the-fact offense does have some elements in common with the principal crime insofar as it requires proof of the substantive offense by someone; and it is certainly a lesser offense carrying a lesser penalty. 18 U.S.C. § 3. But the accessory offense is not a lesser included offense because it requires proof that the principal offense does not, namely, that the defendant assisted after the principal crime was committed.

*Id.* at 6 & n.5.

This court agrees with the analysis set forth in *Rivera-Figueroa* and concludes that being an accessory after the fact is not a lesser included offense of carjacking because it requires proof of an element not necessary to prove carjacking. *Cf. United States v. Moore*, No. 92-1351, 1994 WL 52640, at *6 (10th Cir. Feb. 17, 1994) (unpublished disposition cited as persuasive authority pursuant to 10th Cir. R. 36.3) (applying elements test and holding that an accessory-after-the-fact charge was not a lesser included offense of a possession

-14-

of narcotics with intent to distribute charge because the accessory charge requires proof of an element not required to prove the underlying drug charge). Accordingly, this court concludes that the district court did not err in declining McGuire's proffered lesser-included-offense instruction. *Cf. United States v. McCoy*, 721 F.2d 473, 475 ( 4th Cir. 1983) (holding that Double Jeopardy Clause did not bar new trial and conviction on accessory-after-the-fact charges after defendant had previously been acquitted of being an aider and abettor to the underlying crime because the charges required proof of different elements).

McGuire obliquely references in a string citation the decision of the Eighth Circuit in *United States v. Brown*, 33 F.3d 1002 ( 8th Cir. 1994). The court in *Brown* held that it is reversible error to refuse to give an accessory-after-the-fact instruction in conformity with a defendant's theory of defense. *See id.* at 1004. *Brown* involved a prosecution for bank robbery. *See id.* at 1003. The defendant was caught several days after the robbery retrieving two duffle bags containing the proceeds of the robbery. *See id.* At trial, the defendant took the stand and testified that an acquaintance had paid him to retrieve the bags but that he did not know what was inside. *See id.* The defendant then proffered a theory of the defense instruction which set out the elements of being an accessory after the fact and specifically informed the jury that if it found the defendant was a mere accessory after the fact, rather than a principal, it must acquit him on the bank

robbery charge. *See id.* at 1003, 1004. The Eighth Circuit concluded that the district court had erred in refusing to give the proffered instruction, holding as follows:

> We hold the district court should have given the jury the proffered accessory after the fact instructions. . . . [T]he proffered instructions correctly stated the applicable law and correctly directed the jury to acquit Brown if the jury found him not guilty of bank robbery, but guilty as an accessory after the fact. In the present case, the accessory after the fact theory functions as a defense. This is because the government did not charge Brown as an accessory after the fact. The government's theory of the case was that one person had committed the bank robbery and that Brown was that person. Brown did not dispute either that the bank had been robbed or that he had attempted to retrieve the duffel bags; his theory of defense was that he was, at most, an accessory after the fact.

*Id.* at 1004.

The situation in *Brown* is clearly distinguishable from the facts in this case. In *Brown*, the defendant requested an accessory-after-the-fact instruction as his theory of defense. That instruction specifically informed the jury what it meant to be both a principal and an accessory after the fact and indicated that should the jury conclude the defendant was merely an accessory after the fact, rather than a principal, it must acquit. This was so because the armed bank robbery charge was the only charge set forth in the indictment. *See id.* Such an instruction presents the jury with a stark choice: it must acquit the defendant of the count charged even though it concludes that the defendant did in fact commit the crime of being an accessory after the fact.

-16-

McGuire's proposed instruction was not a theory of defense instruction. It was, as noted above, a lesser-included-offense instruction. Unlike the instruction in *Brown*, which presented the alternative that if the defendant was "only" an accessory after the fact he must be acquitted of the only charged crime, McGuire's proffered instruction would have had the jury first consider whether the prosecution had satisfied each of the elements of the carjacking offense actually charged in the indictment. The jury would have proceeded to the question of whether McGuire was an accessory after the fact if, and only if, it were to acquit McGuire of carjacking. As noted above, however, a charge of being an accessory after the fact is not a lesser include offense of carjacking. Given the important distinction between theory-of-defense instructions and lesser- included-offense instructions, the analysis of the Eighth Circuit in *Brown* simply does not apply to the circumstances of this case. [5] *See Duran*, 127 F.3d at 916 n.4 (noting that although defendant might have been entitled to theory-of-defense instruction, he was not entitled to erroneous lesser-included-offense instruction).

---

[5]Because McGuire requested a lesser-included-offense instruction, rather than a theory-of-defense instruction, this court has no occasion to opine on the question of whether defendants in this Circuit are entitled to a instruction such as the one approved by the Eighth Circuit in *Brown*. *See United States v. Rivera-Figueroa*, 149 F.3d 1, 6 (1st Cir. 1998) (surmising that "[t]he Eighth Circuit's approach [in *Brown*] appears . . . liable to mislead the jury").

The district court did not err in declining McGuire's proffered lesser-included-offense instruction.

C.     *Failure to Provide Special Jury Instruction on Eye Witness Identifications*

At the close of the evidence, McGuire submitted a proposed cautionary jury instruction noting special reliability concerns with eyewitness identifications.  Generally, McGuire's proposed instruction provided that jurors should view eyewitness identification testimony with caution if the testimony is weakened by lack of opportunity on the part of the eyewitness to observe the defendant, equivocation, prior inconsistent identifications, or prior failures to identify.  The district court declined McGuire's requested instruction and decided against providing the jury with any special instruction on eyewitness identifications.

As recognized by McGuire, this court has rejected a rigid rule in favor of giving a special eyewitness instruction in every case and, instead, has adopted a flexible approach in determining whether the district court abused its discretion in refusing to give such an instruction.     *See United States v. Thoma*   , 713 F.2d 604, 607-08 ( 10th Cir. 1983);   *United States v. Connor*   , 752 F.2d 504, 507-08 (10th Cir. 1985);   *United States v. McNeal*   , 865 F.2d 1167, 1171-72 (    10th Cir. 1989);  *see also United States v. Brooks*    , 928 F.2d 1403, 1407-08 (    4th Cir. 1991)

(describing and adopting "flexible" approach set forth by this court in *Thoma*).

Under *Thoma*,

> When a cautionary instruction on the possible infirmities of eyewitness testimony is requested and not given, on appeal we will focus on the facts of each case to determine whether the instruction was required to fairly present the case to the jury. In particular, we will consider whether identification was the sole or primary issue in the case, whether the evidence consisted mainly of eyewitness identification testimony, and whether that testimony was uncertain, qualified, or suggested a serious question whether the witness had an adequate opportunity to observe.

713 F.2d at 608.

A consideration of those factors set out in *Thoma* leads to the certain conclusion that the district court did not err in refusing McGuire's proffered eyewitness instruction. Jellison's in court identification of McGuire was clear and unequivocal. Furthermore, Jellison testified that she had an unusually good opportunity to observe her attacker. [6] Moreover, Jellison's in-court identification

---

[6]Jellison testified as follows about her opportunity to observe McGuire during an exchange when McGuire asked Jellison for a cigarette:

Prosecutor: What happened [when McGuire first approached you in the cemetery and asked for a cigarette?]

Jellison: I said, no, I didn't have a cigarette. And I think it was at that time that I noticed that he had a bat. And I–I knew that something was a little strange. You know, he had a bat, the two guys were sitting next to my car and, you know, I was scared, so I–I knew that I needed to make sure that I could identify this guy in case something did happen, so I–

Prosecutor: Okay. Let me stop you right there. As the Defendant asked you for a cigarette, how far away was he from

-19-

of McGuire as her attacker is entirely consistent with her earlier identification of McGuire from a photographic lineup. [7] Accordingly, there is very little in the

<div style="margin-left: 2em">

|              |                                                                                                                   |
|--------------|-------------------------------------------------------------------------------------------------------------------|
|              | you?                                                                                                              |
| Jellison:    | Oh, four feet or less.                                                                                             |
| Prosecutor:  | And the lighting conditions, could you see?                                                                        |
| Jellison:    | Yes, it was still daylight.                                                                                        |
| Prosecutor:  | Now, you said you knew you needed to be able to identify him. How did you know that?                              |
| Jellison:    | I've had self-defense training and I've even taught some self-defense courses myself, and that's one big thing that's really emphasized. |
| Prosecutor:  | So what did you do to try to make sure you could identify the Defendant later?                                     |
| Jellison:    | Well, when he asked me for the cigarette, you know, I said no. And I made a point of saying, well, you're not old enough to smoke anyways, trying to see if I could get his age or whatever, and it really allowed me to get a real good look of his face when I said that, you know. And he said yes he was old enough, I think he might have said he was 20 years old. And again, when he said that, that allowed me to again turn and look at his face and get another good look at him and say, oh, you don't look 20. And I just–it gave me two real good chances to really look at his face really close without seeming–seeming like I was doing that on purpose. |

</div>

[7]McGuire seems to assert that this court should not consider Jellison's identification of him in the photographic line-up because that line-up was suggestive. As noted by the United States, however, McGuire never challenged the line-up on any grounds before the district court. *Cf. Yapp v. Excel Corp.*, 186 F.3d 1222, 1230 (10th Cir. 1999) ("This court does not address issues that were not properly raised before the district court."). Furthermore, McGuire has included only a passing reference to the supposedly suggestive line-up in his appellate brief and has failed to include the photo array in the record on appeal. Finally, the mere failure to include Clovis' picture in the array does not render the line-up suggestive. After Clovis and McGuire were detained by the officers in Manhattan, McGuire provided officers with his real name and Clovis provided officers with an alias. After the officers from Manhattan called the officers in

record to indicate that Jellison's identification of McGuire was uncertain or that she did not have an adequate opportunity to observe McGuire at the time of the attack. *Id.* Jellison's identification of McGuire as her attacker did not stand alone; it was corroborated by the following testimony at trial: Clovis clearly identified McGuire as the principal of the carjacking offense; McGuire was arrested in Jellison's vehicle within a few hours of the carjacking; and, McGuire was wearing two earrings in his left ear and wearing clothing which matched the description given by Jellison to officers after the attack.

In light of the clear and unequivocal nature of Jellison's identification and the plethora of corroborative evidence supporting that identification, this court concludes that the district court did not err in denying McGuire's request for a cautionary eyewitness instruction.

### D. *Restrictions on McGuire's Cross-Examination of Clovis*

At trial, McGuire sought to cross-examine Clovis as to each of the following three matters: (1) Clovis' three juvenile convictions for misdemeanor theft; (2) an incident in which Clovis allegedly beat his former girlfriend; and (3)

---

Topeka and informed them of the names, the Topeka officers searched their files and found a picture of McGuire. No file, and hence no photograph, existed under the alias given by Clovis. Because McGuire's photograph matched the description provided by Jellison, officers included McGuire's picture in a photo array and presented the line-up to Jellison. Jellison immediately identified McGuire as her assailant. There was nothing untoward or suggestive about this procedure.

whether Clovis was on probation at the time of the carjacking. The district court wholly precluded McGuire from cross-examination concerning the juvenile theft convictions and alleged beating of Clovis' girlfriend. Although the district court allowed McGuire to ask Clovis whether he was on probation at the time of the carjacking, it refused to allow any follow-up questions after Clovis responded in the negative. McGuire contends that these restrictions on cross-examination so limited his ability to demonstrate any potential bias and prejudice on the part of Clovis as to constitute a violation of the Sixth Amendment's Confrontation Clause.

This court reviews *de novo* whether cross-examination restrictions violated a defendant's Sixth Amendment right to confrontation. *See United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998). "Because a defendant's right to cross-examine witnesses is neither absolute nor unlimited, '[t]he trial court retains broad discretion to limit cross-examination to prevent, among other things, undue prejudice and confusion of the issues.'" *United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir. 1998) (quoting *Gault*, 141 F.3d at 1403). In reviewing a defendant's challenge to limitations on cross-examination, this court's role is "to determine whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *Id.*

This court has reviewed Clovis' testimony and concludes the jury had sufficient information to properly appraise his credibility, motives, and any possible bias. In contrast to McGuire's assertions, the district court allowed him to conduct an extensive and searching cross-examination of Clovis. McGuire elicited the following testimony by cross-examination of Clovis, all of which bears on Clovis' credibility, motives, and biases: that Clovis initially lied to police about his true name and his whereabouts and activities of the previous twenty-four hours when he was first arrested by police in Manhattan, Kansas; that Clovis did not "come clean" with the officers until Topeka detectives spoke with him the next day and informed him that they thought that McGuire was the primary attacker; that Clovis pleaded guilty to reduced federal charges and was to receive a favorable sentencing recommendation; that his father had committed him for a thirty-day stay at the Parkview Mental Hospital ("Parkview") because he "was lying to [his father] all the time"; that the doctors at Parkview concluded Clovis was "totally out of control," suffered from bipolar disorder, and was a danger to himself and others; that Clovis told the staff at Parkview that he was involved in gang activity, carried knives and guns, and had shot at people; that sometime after his stay at Parkview, Clovis was placed at the Topeka Youth Center, where the staff described him as "violent and aggressive"; and that he was placed in a different psychiatric facility in January of 1994, again told

facility staff that he was involved in gangs, sold drugs, and had killed people, and was again diagnosed as suffering from bipolar disorder. The broad cross-examination allowed was sufficient to attack Clovis' credibility and to present McGuire's theory of the case, *i.e.*, that Clovis was the violent aggressor and, in conformity with his history of violence, savagely beat Jellison and hijacked her car.

Despite the extensive cross-examination detailed above, McGuire asserts that the limitations imposed by the district court are inconsistent with the Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308 (1974). In *Davis*, the Supreme Court found a violation of the Confrontation Clause when a criminal defendant was precluded from cross-examining the state's key witness about his juvenile adjudications and probationary status. *See id.* at 317.

McGuire's protestations to the contrary, "*Davis* did not hold 'that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.'" *United States v. Williams*, 963 F.2d 1337, 1340 (10th Cir. 1992) (quoting *Davis*, 415 U.S. at 321 (Stewart, J., concurring)). In fact, this case is distinguishable from *Davis* in several important respects. Unlike *Davis*, there is absolutely nothing in the record on appeal to support McGuire's speculation that Clovis was on probation at the time of the carjacking.

Accordingly, the district court did not abuse its discretion in cutting off further questions about Clovis' criminal history, absent some indication that his testimony as to his probationary status was false. *See Bindley* , 157 F.3d at 1240 (noting that trial courts retain broad discretion to limit cross-examination to prevent undue prejudice and confusion of the issues). In addition, the witness in *Davis* was the key witness. *See Davis* , 415 U.S. at 310 (describing witness as "crucial"); *Williams* , 963 F.2d at 1340-41 (" *Davis* involved the key witness for the prosecution."). Here, Jellison unequivocally identified McGuire as her attacker and evidence adduced at trial strongly corroborated McGuire's involvement even absent the testimony of Clovis. Finally, as set out above, McGuire effectively attacked Clovis' credibility, bias, and motives without reference to Clovis' juvenile adjudications and alleged probationary status. *See Williams* , 963 F.2d at 1341 (noting that in *Davis* , "the defense did not have effective means, other than juvenile adjudications and probationary status, of attacking the witnesses' credibility or probing for bias").

Finally, we easily conclude that the district court did not abuse its broad discretion to control cross-examination when it precluded, on relevancy grounds, a line of questions relating to Clovis' allegedly abusive relationship with his ex-girlfriend. McGuire never made an offer of proof as to the nature and extent of Clovis' alleged abuse of his girlfriend and never argued that the alleged abuse

had a signature element similar to the attack on Jellison. *Cf.* Fed. R. Evid. 103(a)(1) (providing that error may not be predicated upon a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked"); *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993) (citing Rule 103 in case involving confrontation challenge to cross-examination limitations). Absent such a proffer, it is impossible to conclude that McGuire's substantial rights were affected by the limitation on cross-examination. Furthermore, as set out above, McGuire was able to develop Clovis' violent and lawless nature through other avenues of cross-examination.

## IV. CONCLUSION

For all of the reasons set out above, the judgment of conviction entered and sentence imposed by the United States District Court for the District of Kansas is hereby **AFFIRMED**.